# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 13, 2016

## STATE OF TENNESSEE v. LAMONEZ DESHAUN THAXTON

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1662    J. Randall Wyatt, Jr., Judge**

---

**No. M2016-00216-CCA-R3-CD – Filed November 2, 2016**

---

The defendant, Lamonez Deshaun Thaxton, appeals his Davidson County Criminal Court jury convictions of reckless endangerment and attempted especially aggravated robbery, claiming that the trial court erred by denying the defendant's motion to exclude evidence, that the evidence was insufficient to sustain his convictions, and that the sentence imposed was excessive.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Lamonez Deshaun Thaxton.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jude Santana and Jeffrey Jackson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Davidson County Grand Jury charged the defendant with one count each of attempted first degree murder, especially aggravated robbery, employing a firearm during the commission of a dangerous felony, and attempted aggravated robbery, arising out of the robbery and attempted murder of Arterries Chatman and the attempted robbery of Marshaqueze Clark.  The trial court conducted a jury trial in August 2015.

The State's proof at trial showed that, shortly after midnight on December 24, 2013, Mr. Chatman drove Ms. Clark and her four-year-old daughter to Ms. Clark's residence on Nocturne Drive.  When the trio arrived at the residence and got out of the vehicle, the defendant appeared out of some nearby bushes brandishing a handgun and

told Mr. Chatman to "'come on with it.'" Mr. Chatman took that demand to mean that the defendant intended to rob him, and Mr. Chatman responded that he "'don't got nothing.'" Mr. Chatman recalled that the defendant was pointing the gun at him and that he felt fearful. The defendant instructed Ms. Clark to "'just get you and your daughter and you go on[,] you ain't got nothing to do with this.'" After Ms. Clark entered her residence, Mr. Chatman continued to argue with the defendant, and the defendant shot Mr. Chatman once in the left leg below the knee. At that point, Mr. Chatman fell to the ground, and the defendant stole his iPhone and $90 in cash. Mr. Chatman testified that nothing was covering the defendant's face and that he "could see him clearly." When asked at trial to describe the level of pain the shooting caused, Mr. Chatman stated, "They say 1 to 10. I'm going to rate it to 1 to 20."

Ms. Clark testified that she heard the gunshot as she was running away, and she stated that she called 9-1-1 from her mobile telephone as she was entering her apartment. Once she was inside, Ms. Clark looked through her apartment window and saw Mr. Chatman lying on the ground while the defendant searched through Mr. Chatman's pockets.

Metropolitan Nashville Police Department ("Metro") Officer Bradley Hambrick responded to the call of a shooting at Nocturne Drive, and when he arrived at the scene, he discovered Mr. Chatman seated on the apartment building's exterior steps. Officer Hambrick observed that Mr. Chatman "was in some pain" and noticed that "[t]here was a lot of blood." It was "very apparent" to Officer Hambrick that Mr. Chatman had been shot. Mr. Chatman described the shooter to Officer Hambrick as "an African American male in his early 20s" who was approximately six feet tall, "160 pounds and that he was wearing blue jeans, a red shirt, with a gray hoodie" with "dreadlocks" and "a medium skin complexion." Officer Hambrick recalled that Ms. Clark's description of the shooter matched that of Mr. Chatman's. Ms. Clark admitted at trial that the defendant was related to her brother and that, although she knew the defendant when they were both younger, she did not immediately recognize him on December 24 because he had aged and "look[ed] different." Ms. Clark also conceded that others had contacted her following the shooting and informed her that the defendant was the perpetrator.

Mr. Chatman was transported to the hospital, where he stayed overnight for treatment of his gunshot wound. He testified that the injury had caused nerve damage and that he had been undergoing physical therapy since the shooting.

Metro Detective Tim Codling testified that another Metro officer and Ms. Clark had both provided the defendant's name to him as a possible suspect in the shooting and robbery. On January 29, 2014, both Mr. Chatman and Ms. Clark viewed

separate photographic lineups prepared by Detective Codling, and both positively identified the defendant as the shooter. The photographic lineups were introduced into evidence, and the photograph of the defendant showed an African-American male with dreadlocks.

The parties stipulated that Metro officers "came into contact" with the defendant on April 5, 2014; that "a 9mm semi-automatic Ruger" firearm "was recovered in close proximity to the defendant"; that the defendant "had a cut on his hand"; and "that there was blood on the gun." Metro Officer Arthur Hipp testified that he took "DNA swabs" from the Ruger handgun and that the swabs were given to the Tennessee Bureau of Investigation ("TBI") for testing.

TBI Agent Chad Johnson testified as an expert in the field of forensic biology. Agent Johnson conducted deoxyribonucleic acid ("DNA") testing on the swabs taken from the handgun and compared it to a buccal swab taken from the defendant, concluding that the blood matched the defendant's DNA. TBI Agent Jessica Hudson testified as an expert in the area of firearms and tool mark identification. Agent Hudson conducted testing on the firearm at issue and determined that a nine-millimeter cartridge casing recovered from the crime scene had been fired from that weapon.

With this evidence, the State rested. Following the defendant's motion for judgments of acquittal and a *Momon* colloquy, the defendant elected not to testify and chose not to present any proof. After taking the defendant's motion under advisement, the trial court denied the motion as to the first three counts of the indictment but granted a judgment of acquittal on the count of the attempted aggravated robbery of Ms. Clark.

Based on the evidence presented, the jury convicted the defendant of the lesser included offenses of reckless endangerment and attempted especially aggravated robbery, and the jury found the defendant not guilty of the charge of employing a firearm during the commission of a dangerous felony. Following a sentencing hearing, the trial court imposed a sentence of 11 months and 29 days' incarceration for the reckless endangerment conviction, to be served concurrently to a 10-year sentence as a standard offender for the conviction of attempted especially aggravated robbery. Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal.

In this appeal, the defendant contends that the trial court erred by denying his motion to exclude evidence, that the evidence was insufficient to support his convictions, and that the sentence imposed was excessive. We will address each issue in turn.

## I. Motion to Exclude

The defendant first contends that the trial court erred by denying his pretrial motion to exclude evidence of the handgun at issue and of the crimes for which he was arrested in April 2014, to wit: resisting arrest, evading arrest, and possession of a weapon. The defendant argues that the admission of those charges would constitute inadmissible prior bad acts. We disagree.

As an initial matter, we note that the defendant failed to raise these issues in his motion for new trial. Accordingly, he has waived plenary review of this issue. Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."); Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

In any event, evidence of the defendant's April 2014 charged offenses was never admitted at trial, and evidence that the defendant was found, on April 5, "in close proximity" to a Ruger handgun was admitted into evidence at trial via a stipulation. Because the defendant agreed to the admission of the handgun evidence at trial, he cannot now be heard to complain. *See* Tenn. R. App. P. 36(b).

Moreover, even had the defendant not stipulated to the admission of the handgun evidence, possession or ownership of a firearm "standing alone, does not constitute a crime" and is not, therefore, prohibited by Tennessee Rule of Evidence 404(b). *See State v. Reid*, 213 S.W.3d 792, 813-14 (Tenn. 2006). The handgun was probative of the defendant's identity as Mr. Chatman's shooter, as will be discussed more fully herein, and was thus clearly admissible. In consequence, the defendant is not entitled to relief on these issues.

## II. Sufficiency

The defendant next contends that the evidence adduced at trial was insufficient to support his convictions. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This

standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As relative to this case, misdemeanor reckless endangerment[1] occurs when a person "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a), (b)(1). "Especially aggravated robbery is robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon; and . . . [w]here the victim suffers serious bodily injury." T.C.A. § 39-13-403(a). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "'Serious bodily injury' means bodily injury that involves . . . [a] substantial risk of death; [or] [e]xtreme physical pain." T.C.A. § 39-11-106(a)(34).

Criminal attempt is committed when a person, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3).

Here, the proof adduced at trial established that the defendant accosted Mr. Chatman, pointed a handgun at him, and demanded that Mr. Chatman "'come on with it,'" which Mr. Chatman took to mean that the defendant intended to rob him. When Mr. Chatman did not immediately comply with the defendant's request, the defendant shot

---

[1]     Although not raised by either party, we note that the trial court, in issuing its charge, erroneously instructed the jury on the offense of felony reckless endangerment, which includes the additional requirement that the offense be committed with a deadly weapon, rather than misdemeanor reckless endangerment. *See* T.C.A. § 39-13-103(a), (b)(1)-(2). Because, however, felony reckless endangerment is not a lesser included offense of attempted first degree murder, the jury's conviction of reckless endangerment necessarily had to be of the misdemeanor variety. *See State v. Mario C. Gray*, No. M2006-00398-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, Dec. 17, 2007), *perm. app. denied* (Tenn. April 28, 2008). Accordingly, the defendant was properly sentenced for a conviction of misdemeanor reckless endangerment, and the trial court's error was harmless.

him once in the lower left leg and stole Mr. Chatman's cellular telephone and cash.  Ms. Clark, who was watching from her apartment window, saw the defendant searching Mr. Chatman's pockets.  Mr. Chatman testified that he was afraid during the incident and that the shooting caused extreme pain.

Both Mr. Chatman and Ms. Clark positively identified the defendant in a photographic lineup one month after the incident.  The parties stipulated that the defendant was found, four months later, "in close proximity" to a nine-millimeter handgun, that there was blood on the gun, and that the defendant had a cut on his hand.  DNA testing revealed that the blood on the handgun matched that of the defendant, and ballistics testing concluded that a nine-millimeter cartridge casing recovered from the crime scene had been fired from that same handgun.

The defendant primarily takes issue with Ms. Clark's identification of him, essentially arguing that her prior knowledge of the defendant and her acknowledgment that people told her of his involvement negated her credibility.  The jury, however, as the trier of fact, resolves all questions of witness credibility, and it clearly found Ms. Clark's and Mr. Chatman's identification of the defendant to be credible.  *See Cabbage*, 571 S.W.2d at 835.

Taking all of this evidence into consideration, we find that the defendant intended to deprive Mr. Chatman of his property by violence or placing him in fear and by causing serious bodily injury to Mr. Chatman and that the defendant recklessly engaged in conduct that placed Mr. Chatman in imminent danger of serious bodily injury.  Thus, the evidence strongly supports the defendant's convictions of the lesser included offenses of reckless endangerment and attempted especially aggravated robbery.

*III. Sentencing*

Finally, the defendant contends that the 10-year sentence imposed by the trial court is excessive and that the trial court erred by denying his request for alternative sentencing.  Again, we disagree.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).  The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed."  T.C.A. § 40-35-103(5).  Trial courts are "required under the 2005

amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

The imposition of a 10-year sentence in this case mandated the trial court's consideration of probation as a sentencing option. *See* T.C.A. § 40-35-303(a), (b). Traditionally, the defendant has born the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "'subserve the ends of justice and the best interest[s] of both the public and the defendant.'" *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956)), *overruled on other grounds by State v Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). The supreme court expanded the holding in *Bise* to the trial court's decision regarding probation eligibility, ruling "that the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

*Id.*

In the instant case, the record reflects that the trial court found no mitigating factors to be applicable but based its decision on the applicability of two enhancement factors: the defendant's criminal history, *see* T.C.A. § 40-35-114(1), and the fact that he employed a firearm during the commission of the underlying offense, *see* T.C.A. § 40-35-114(9). With respect to the first factor, the trial court noted that, although the defendant had no prior felony convictions, he had several prior misdemeanor convictions, and the court found that the defendant's "consistent pattern of violating the law weigh[ed] in favor of enhancement." With respect to the second factor, use of a deadly weapon is an essential element of the offense of attempted especially aggravated robbery and, therefore, should not have been used to enhance the defendant's sentence. *See State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). We need not tarry long over this error, however, because "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court carefully considered all the relevant principles associated with sentencing, including the enhancement factors and the factors related to sentencing alignment, when imposing the sentence. Thus, we conclude that the record fully supports the length of sentence imposed in this case.

With respect to the defendant's desire for "some form of alternative sentencing," we discern that his argument on this issue is limited to a single sentence, utterly devoid of citation to authority or legal argument. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. R. Ct. Crim. P. 10(b); *see also* Tenn. R. App. P. 27(a)(7) (stating that the appellant's brief must contain an argument "setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities . . . relied on"). Because the defendant failed to comply with these rules, he has waived our consideration of this issue.

In any event, the trial court made specific findings that incarceration was necessary due to the seriousness of the offense and to act as a deterrent to others; that confinement was warranted due to the defendant's criminal history; and that measures less restrictive than confinement had been unsuccessful in the past. Thus, the trial court did not abuse its discretion by ordering a fully-incarcerative sentence.

*IV. Conclusion*

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____

JAMES CURWOOD WITT, JR., JUDGE